LINDSAY *versus* KING.

QUESTION IN THIS CASE.

*As to a levy upon property, the claim to which has been tried under execution.*

1. Property levied on under execution, and claimed by third persons, under the statute, (the right of which is found against them,) cannot be subsequently levied on by virtue of a judgment, obtained against the claimants and their sureties, on their bond to re-deliver.

In error from Talladega Circuit Court.

Certain slaves having been levied on under an execution, in favor of Edmund King, issued to the sheriff of Talladega county, as of the property of Lucy Carlton, the same were claimed by the plaintiff in error, under the statute.

On the trial of the right of property the plaintiff in execution, in order to establish the right of levy, produced in evidence an execution against Lucy Carlton, and Robert Carlton, issued from the Circuit Court of Bibb; and which emanated from a judgment obtained in that Court in 1834. This judgment was founded on a bond, executed by one Isaac Carlton and the said Lucy, conditioned to deliver to a certain officer, slaves (part of whom included the present in contest,) which had been levied on as of the estate of one Thomas Carlton, a claim to which had been interposed by Isaac and Robert W. Carlton; and to which bond the said Lucy was the surety. This claim, after trial, was determined adversely to the claimants; and the judgment was founded upon

the non-delivery of the slaves, as stipulated in the bond. The defendant in error subsequently had an execution levied, under this judgment, upon part of the slaves which had before been levied on as of the property of Thomas Carlton ; and to try the right of which, (they being in the possession of Lindsay,) this proceeding was instituted. The claim was determined in favor of the plaintiff in execution ; and a writ of error, founded upon a bill of exceptions, brought the case into this Court.

The only question was, whether the property, the claim to which, under execution against Thomas Carlton, had been determined against the claimants and their surety, could be levied, by virtue of an execution issued on the judgment, obtained against the latter on their bond, to re-deliver the property claimed.

*Ellis & Peck* and *P. Parsons* for the plaintiff in error ; *Mardis, contra.*

COLLIER, J.—The defendant in error obtained several judgments against Thomas Carlton, in the Circuit Court of Bibb county. Executions were issued and levied on several slaves, which Isaac S. and Robert W. Carlton claimed as their property : the right being tried and found against them, they prosecuted an appeal ; and a bond was executed by Isaac S., and Lucy Carlton as his surety—conditioned to pay damages, and re-deliver the property, if the right should be found against the claimants in the Circuit Court. The claimants being again unsuccessful, and failing to return the slaves, pursuant to the condition of the bond, a suit was brought for the breach, against Lu-

cy Carlton, in the Circuit Court of Bibb. Judgment being obtained, she sued out a writ of error to this Court, with Robert W. Carlton as her surety; which judgment being here affirmed, execution issued from the Circuit Court to the sheriff of Talladega against the estate of Lucy and Robert W. Carlton, and was levied on one of the slaves (and her child) which had been levied on to satisfy the execution against Thomas Carlton. The property was claimed by the plaintiff in error, and a trial had in the Circuit court of Talladega, and a verdict and judgment against him; from which he prosecutes his writ of error to this Court.

The first question naturally suggested, is this— can the slaves in controversy, because of the condemnation of the mother, to satisfy the execution against Thomas Carlton, be made subject to an execution against Robert W. and Lucy Carlton, whose right has been negatived by a verdict and judgment?

There is no pretence that Thomas Carlton, by any act of his, has transferred the slaves in question, to the defendants in execution ; nor is it insisted that they have acquired a title to them from any other source. But the law, operating silently, yet efficiently—has vested, as it is argued, in Isaac S. and Robert W. Carlton, (and of consequence, in Lucy Carlton, who comes in as surety of Isaac S.) from the very *moment of time* there was an adverse determination of their claim, an interest in the slaves, which rendered them liable to be sold as their property, to satisfy the execution of the defendant in error. This argument is founded upon the supposition, that as judgment has been rendered against them on their claim of property, they should have

the property to enable them to satisfy that judgment. Without intending to deny that the property is primarily liable to satisfy the judgment against Thomas Carlton, and that, even in favor of these claimants— we are sure that the doctrine of transfer, by operation of law, has been pushed, in argument, quite beyond the authority of any principle or decision, of which we are aware.

The *fieri facias* directs the sheriff, that of the "goods and chattels, lands and tenements, he cause to be made," &c. If by the judgment, subjecting the property to the satisfaction of the execution of of the defendant in error, these claimants acquired an interest in the slaves, which would authorise them to be levied on as their "goods and chattels,"—would they not be subject to seizure, to satisfy judgments obtained by their general creditors. We are inclined to think that such would be the result (at least at law) from the recognition of the principle, which is essential to the success of the defendant in error. It is sufficient to state such a consequence, to persuade us the principle is not maintainable.

If it were *possible* for Robert W. and Lucy Carlton, to acquire such an interest in these slaves as to make them subject to satisfy their debts, surely that interest could only be created by the satisfaction of the judgment against Thomas Carlton. Until this has been done, there is no act of theirs which could pass to them a tangible right.

In the case of *Mills, et al.* vs. *Williams,*[a] the doctrine of equitable lien was extended quite as far as we feel authorised to carry it. In that case there was

Mar.Term
1.23.

3 v. P.                      52

a claim of property, and the claimants were unsuccessful: they satisfy the judgment—the property is then levied on and sold to satisfy the execution against defendant in execution, and several other executions against him: a rule is entered against the sheriff, when the question as to the appropriation of the proceeds among the judgment creditors, is brought up. The Court say—"the execution was suspended in its operation, on the property levied on, but it lost not the lien acquired. It was not superseded, and might, at the same or any other time, have been levied on other property for satisfaction." Further—"the execution could have run from the County Court against all the property of the defendant, until it was satisfied: There is no question, but when it was levied first on the slave Melinda, it acquired a claim to satisfaction as far as the proceeds of the sale of her would have went. This was prior to the lien of any other of the executions. A majority of the Court believe, that the lien there acquired, was not lost by the trial of the right of property." The Court there determined, that the claimants having satisfied the judgment against them, are subrogated to the rights of the plaintiff in execution, and seem to consider them as occupying an attitude similar to sureties; and that an unsuccessful claimant of property who has satisfied the judgment against him may avail himself of an execution against the defendant for his own indemnity, and subject the property, the title to which has been controverted, in preference to other judgment creditors—unless the lien of that *fi. fa.* has been lost. But in that opinion, there is not the most remote intimation that the property could be reached in a case situated as the present. And

whether we consider the question now presented, upon principle, or with reference to authority, we are convinced that the slaves in question, can not be reached by an execution against Robert W. and Lucy Carlton, and that if defendant in error would litigate the right to them, he should sue out a *fieri facias* against the estate of Thomas Carlton.

The view which we have taken, being decisive of the right of the defendant in error, to subject the slaves to sale in this proceeding. We decline examining the exceptions to the instructions given to jury.

The judgment is reversed.